UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAJENA SOLOMON, Individually and as Administrator of the Estate of Landon Lockhart, | ) ) ) ) ) | CASE NO. 4:24-cv-84 |
| PLAINTIFFS, | ) ) ) | CHIEF JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| ROBERT GENTILE, et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Now before the Court is the motion of plaintiff LaJena Solomon ("Solomon") to extend the discovery deadline *nunc pro tunc*. (Doc. No. 53 (Motion).) Defendants, Robert Gentile ("Gentile"), Hannah Short ("Short"), and the City of Youngstown, oppose the motion. (Doc. No. 54 (Response).)

On January 12, 2024, with the benefit of counsel, Solomon filed this civil rights action, on behalf of herself and as the administrator of the estate of her son, Landon Lockhart, alleging that defendants failed to make an appropriate and prompt investigation into Lockhart's disappearance. Specifically, Solomon avers that, on November 21, 2021, she contacted the Youngstown Police Department ("YPD") to report her minor son missing. (Doc. No. 1 (Complaint) ¶ 12.) According to Solomon, Gentile, a YPD lieutenant, and Short, a police officer with the YPD, failed to treat Lockhart's disappearance as a "missing child" and, instead, classified Lockhart as a "runaway," resulting in the failure to trigger an AMBER alert under Ohio Rev. Code § 5502.52(B). (*Id*. ¶¶ 3–

4, 13–20.) Tragically, Lockhart's body was discovered on January 13, 2022, and his death was ruled a homicide. (*Id*. ¶ 28.) Solomon raises an equal protection claim under 42 U.S.C. § 1983, as well as state law claims for wrongful death, under Ohio Rev. Code § 2125.01 *et seq*., and survivorship, under Ohio Rev. Code § 2305.21. (*Id*. ¶¶ 39–50, 52–59, 61–65.)

There have already been numerous delays in this action, most of which can be traced back to Solomon or her counsel. On February 29, 2024, Solomon's original counsel moved to withdraw. (Doc. No. 8 (Motion to Withdraw), at 1.[1]) The Court granted the motion. (Order [non-document], 2/29/2024; Amended Order [non-document], 3/20/2024.) On April 17, 2024, the Court issued an order directing Solomon to show cause why the case should not be dismissed for want of prosecution, given that defendants had yet to be properly served. (Doc. No. 12 (Order), at 1.) Defendants were subsequently served, and, after a brief extension, an answer was filed on behalf of all defendants on June 10, 2024. (Doc. No. 26 (Answer).)

On July 26, 2024, the Court conducted a case management conference with Solomon and counsel for defendants, during which the Court set dates and deadlines for the case. (Doc. No. 35 (Case Management Plan and Trial Order ("CMPTO")).) Pertinent to the present motion, the Court set December 31, 2024 as the deadline for completing fact discovery. (*Id*. at 1.) During the conference, Solomon advised that she was attempting to secure new counsel. In the interim, the Court agreed to permit Solomon to utilize the Court's electronic filing system. (Minutes of Proceedings [non-document], 7/26/2024.)[2]

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] The Court advised Solomon that, as a lay person, she may not be able to represent her son's estate unless she was the sole beneficiary. Solomon indicated that she would attempt to obtain documentation demonstrating that she had been appointed to serve as the administrator of her son's estate and that she was the only beneficiary. (*Id*.) The record reflects, however, that Solomon delayed in providing any information regarding her son's estate. (Doc. No. 36, at 1;

2

On September 9, 2024, defendants filed the first status report in the case, wherein defendants advised, in part, that Solomon's initial disclosure were past due and that Solomon had failed to respond to email requests to participate in the preparation of the status report. (Doc. No. 36 (Defendants' Status Report), at 1.) On September 17, 2024, the Court issued an order directing Solomon to serve her initial disclosures, which were "long overdue," by September 30, 2024. (Doc. No. 37 (Order), at 2.) The Court also informed Solomon that the CMPTO requires the filing of joint 45-day status reports, and that "the purpose of these reports [was] to apprise the Court of the status of discovery, whether any settlement discussions have taken place, whether any motions are pending, and whether there are any developments that might give rise to a need to deviate from the Court's scheduled dates and deadlines."[3] (*Id.*) It emphasized that, going forward, it "expects [Solomon] to cooperate with defense counsel in the preparation and filing of 45-day joint status reports." (*Id.*) Moreover, Solomon was "cautioned that any future failures to cooperate in discovery or otherwise make herself available for purposes of litigating this action may lead to sanctions, including dismissal of this action for failure to prosecute." (*Id.* at 2–3.)[4]

On November 5, 2024, Attorney Stanley T. Booker entered an appearance on behalf of plaintiffs. (Doc. No. 44 (Motion to Appear Pro Hac Vice).) One week later (November 12, 2024),

---

Doc. No. 42, at 1.) In belated responses to defendants' written discovery requests, defendants eventually learned that Solomon's son's estate was only opened on January 22, 2025. (Doc. No. 54, at 2.)

[3] In the CMPTO, the Court cautions attorneys and litigants that the failure to file status reports "will affect the Court's willingness to grant requested extensions of time to perform any acts required under this Order or under any applicable federal or local rule of procedure. Repeated failure to file Joint Status Reports could result in additional sanctions, including dismissal of claims or defenses under [Fed. R. Civ. P.] 41(b)." (Doc. No. 35 (CMPTO), at 2.)

[4] Notwithstanding this warning, Solomon failed to participate in the preparation of the next scheduled status report. (*See* Doc. No. 42 (Defendants' Status Report), at 1.) In an Order, dated October 29, 2024, the Court warned Solomon (again) that the failure to prosecute and/or cooperate with defense counsel could result in sanctions, including dismissal. (Doc. No. 43 (Order), 1.)

the parties filed a joint motion to extend the non-expert discovery deadline by 60 days to afford new counsel the opportunity to "exchange written discovery and take depositions of parties and relevant fact witnesses." (Doc. No. 45 (Joint Motion), at 1.) The Court granted the motion, extended the non-expert discovery deadline from December 31, 2024 to March 3, 2025, and rescheduled the status conference for March 4, 2025. (Order [non-document], 11/13/2024.)

In the parties' joint status report, filed December 9, 2024, counsel reported that, in light of Attorney Booker's recent entry into the case, defendants agreed to an extension to respond to defendants' written discovery requests. (Doc. No. 46 (Joint Status Report), at 1.) The parties further advised that they "anticipate the parties will exchange additional written discovery and take depositions of parties and relevant fact witnesses in accordance with the Court's [CMPTO]." (*Id.*)

The next status report was due January 23, 2025. On that date, defense counsel filed a separate report, noting that Attorney Booker did not respond to requests to contribute to the preparation of the report. (Doc. No. 49 (Defendants' Status Report), at 2.) In their individual report, defense counsel advised that they had discussed with Attorney Booker the perceived deficiencies in Solomon's response to defendants' second request for written discovery. (*Id.*) Defense counsel also reported that, despite having agreed to an extension, they had yet to receive Solomon's response to their first request for written discovery. (*Id.* at 1.)

It is the Court's practice to conduct a status conference with counsel and the parties after the close of fact discovery to discuss, among other matters, the possibility of mediation or some other form of alternative dispute resolution. In accordance with that practice, the Court conducted the scheduled telephonic status conference on March 4, 2025, the day *after* the extended fact discovery period ended. When the Court raised the issue of settlement, Attorney Booker advised

4

that he wished to take several fact depositions before engaging in settlement discussions. The Court reminded counsel that the fact discovery deadline—extended to accommodate him and his client—had already passed. Defense counsel indicated that defendants would likely oppose any further extension of fact discovery. (Minutes of Proceedings [non-document], 3/4/2025.)

The present motion to extend the non-expert discovery deadline, filed March 5, 2025, followed. Solomon and her counsel request a 30-day extension of the already expired fact discovery deadline. (Doc. No. 53, at 1.) In the motion (which is sparse), counsel notes that Solomon was deposed on March 3, 2025, "and following such, additional depositions and discovery requests are required." (*Id.*) He offers his belief that "any mediation or early neutral evaluation would not be fruitful without first deposing the defendants[,]" and suggests that defendants will not be prejudiced because "deposition of the parties and the exchange of additional discovery will aid in the resolution of this litigation prior to trial." (*Id.*)

As anticipated, defendants oppose any further extension of fact discovery, insisting that the delays and inattention by Solomon and her counsel have already negatively impacted their litigation of this case. They detail the difficulties associated with obtaining dates for Solomon's deposition, and note that they ultimately were required to depose Solomon without the benefit of her responses to their discovery requests because of delays caused by Solomon and her counsel. (Doc. No. 54, at 2.) Moreover, they underscore that the only discovery Solomon has conducted to-date is the propounding of written discovery requests, which were not sent until January 27, 2025.[5] (*Id.*) Under these circumstances, they insist that Solomon has failed to demonstrate good cause to

---

[5] Defendants report that they timely responded to these discovery requests on February 26, 2025. (*Id.*; *see* Doc. No. 52 (Notice of Service).)

further amend the CMPTO. (*Id.* at 3.)

"Rule 16 [of the Federal Rules of Civil Procedure] permits district courts to amend the pretrial scheduling order provided that the movant demonstrates 'good cause.'" *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014) (affirming trial court's denial of plaintiff's motion to extend expert discovery deadlines for want of good cause (quoting Fed. R. Civ. P. 16(b)(4))). "'The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements,' though courts may also consider prejudice to the nonmoving party." *Id.* (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2001)); *see also Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) (listing factors—including when the party learned of the issue that is the subject of discovery, the length of the discovery period, and any dilatory conduct by the moving party—to guide consideration of requests to amend the court's scheduling order (citation omitted)).

The Court finds that Solomon has failed to demonstrate that she exercised diligence in attempting to meet the Court's deadlines. Even if the Court excludes from its consideration the time period wherein Solomon was proceeding without the benefit of counsel, it must conclude that Solomon and her new counsel have done very little to advance the litigation. Indeed, counsel waited until most of the extended discovery period had expired before he propounded written discovery. In the present motion, counsel appears to suggest that he did not appreciate the need to conduct any depositions until after his own client was deposed on the second to last day of the extended discovery period. (*See* Doc. No. 53, at 1.) Yet, as early as November 12, 2024, counsel acknowledged the need to "take depositions of parties and relevant fact witnesses[.]" (Doc. No. 45, at 1; *see* Doc. No. 46, at 1.) Moreover, given the allegations in the complaint and the nature of

6

his client's claims, it should have been evident from the first reading of the complaint that taking the depositions of the named defendants, who were the key actors in the events giving rise to the claims, would be prudent. Nevertheless, counsel made no effort to even schedule these depositions until after the amended fact discovery deadline had passed. This demonstrates a complete lack of diligence.

Further, the Court finds that, at this stage in the litigation, an extension of fact discovery would prejudice defendants, who have already been required to endure delays in receiving discovery and have been negatively impacted by the dilatory conduct of Solomon and her counsel. Any more delays would be especially devastating to the individual defendants who are entitled to have the Court resolve the issue of qualified immunity at the earliest possible opportunity. *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (citations omitted); *see also Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("One of the purposes of immunity . . . is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed on those defending a long drawn out lawsuit." (citation omitted)). A further extension of fact discovery could jeopardize the remaining dates in the CMPTO, including the dates associated with dispositive motion practice, and further delay a ruling on qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 3d 411 (1985) (noting that qualified immunity is an "*immunity from suit* rather than a mere defense to liability" (emphasis in original)). And even if the further extension of fact discovery did not ultimately lead to an adjustment of the remaining dates and deadlines in the CMPTO, defendants would be prejudiced because their focus, which (under the CMPTO) should now be exclusively on expert discovery and preparing summary judgment motions, would be split between those endeavors and

completing fact discovery. (*See* Doc. No. 35.)

The Court has both the right and duty to manage its docket in a timely and efficient manner, and the Court cannot justify delaying the disposition of this case based upon the dilatory conduct of Solomon and her counsel. *See Dietz v. Bouldin*, 579 U.S. 40, 47, 136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." (collecting cases)); *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (District courts enjoy wide latitude in "manag[ing] the discovery process and control[ling] their dockets." (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992))).

Because Solomon has failed to demonstrate good cause, her motion to extend the fact discovery deadline is denied.

**IT IS SO ORDERED**.

Dated: March 11, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**